IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DANIEL WARD and SHAREE WARD, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. H-10-0799 |
| USF&G SPECIALTY INSURANCE | § | |
| COMPANY n/k/a GEOVERA SPECIALTY | § | |
| INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Daniel and Sharee Ward bring this action against USF&G Specialty Insurance Company n/k/a GeoVera Specialty Insurance Company ("GeoVera") alleging that GeoVera wrongfully managed an insurance claim the Wards submitted for damages to their home. Pending before the court is Plaintiffs' Motion for Leave to File First Amended Complaint (Docket Entry No. 11).  For the reasons explained below, the court will deny the Wards' motion.

## I.  Factual and Procedural Background

This action concerns GeoVera's handling of the homeowners' insurance claim the Wards submitted for damages their home sustained during Hurricane Ike in mid-September of 2008.  At issue is whether the plaintiffs should be granted leave to file an amended complaint, which would add a Texas insurance adjuster as a defendant in this removed action.  Daniel and Sharee Ward are

individuals residing in Harris County, Texas.[1]   GeoVera is a California insurance company with its principal place of business in California.[2]  The insured property at issue is located in Harris County, Texas.[3]  The proposed defendant, Joel Wilson, is a Texas resident.[4]

## A.   Plaintiffs' Insurance Claim

In 2008 Daniel and Sharee Ward purchased a Texas Homeowners' Insurance Policy ("the Policy") from GeoVera (then known as "USF&G Specialty Insurance Company"), which insured the Wards' home from July 30, 2008, to July 30, 2009.[5]  The parties do not dispute that the Policy covered the Wards' home at the time Hurricane Ike struck Harris County, Texas, on September 12 and September 13, 2008.[6]

The plaintiffs allege that they immediately submitted an insurance claim to the defendant for damages caused by Hurricane Ike, including damages to the roof, the porch, the siding, and

---

[1]Plaintiffs' Original Petition, attachment to Defendant's Notice of Removal, Docket Entry No. 1, ¶ 2.

[2]Defendant's Notice of Removal, Docket Entry No. 1, ¶ 2.3.

[3]Plaintiffs' Original Petition, attachment to Defendant's Notice of Removal, Docket Entry No. 1, ¶ 6.

[4]Plaintiffs' First Amended Complaint, Exhibit A to Plaintiffs' Motion for Leave to File First Amended Complaint, Subject to Plaintiffs' Motion to Remand ("Plaintiffs' Motion"), Docket Entry No. 11, ¶ 4.

[5]Id. ¶ 7; Declaration of Rhonda J. Thompson, Exhibit A to Defendant's Notice of Removal, Docket Entry No. 1, ¶ 3.

[6]Id.

portions of the home's interior.[7]   According to the Wards'
allegations, GeoVera has engaged in a host of wrongful practices,
including wrongfully denying parts of the claim, underpaying other
parts of the claim, delaying payment on the claim, and making
misrepresentations regarding the Wards' coverage under the Policy.[8]

## B.   Plaintiffs' Proposed Joinder

Of particular importance to the pending matter is Joel
Wilson's involvement in the Wards' insurance-claim process and the
timing and extent of the Wards' knowledge of his identity and
activities.   The Wards filed their original petition in the 11th
Judicial District Court of Harris County on January 14, 2010.[9]  The
only named defendant was GeoVera (then "USF&G"),[10] and nowhere in
the petition did the plaintiffs mention Joel Wilson or any other
individual acting on behalf of the insurance company.   Certain
allegations of misconduct, *i.e.*, the Wards' claim that GeoVera
"misrepresented to Plaintiffs that the damage to the Property was
not covered under the Policy," refer to individual statements, but
the petition only attributes these actions to GeoVera.[11]

---

[7]Plaintiff's Original Petition, attachment to Defendant's
Notice of Removal, Docket Entry No. 1, ¶ 10.

[8]Id. ¶¶ 13-26.

[9]Plaintiff's Original Petition, attachment to Defendant's
Notice of Removal, Docket Entry No. 1.

[10]Id. ¶ 3.

[11]Id. ¶ 15.

-3-

On March 10, 2010, GeoVera removed the action on the basis of diversity jurisdiction.  Joel Wilson was not mentioned in GeoVera's Notice of Removal or in any supporting documents.[12]  On May 20, 2010, the Wards filed their Motion for Leave to File First Amended Complaint.[13]

The Wards argue that the court should grant them leave to amend so they can join "Joel B. Wilson," a "newly discovered proper party," as a defendant.[14]  Wilson was the individual adjuster assigned to investigate the Wards' insurance claim and to prepare a damages estimate for GeoVera.[15]  The Wards assert they "were not aware of Wilson's involvement with the claim until [GeoVera] produced portions of its claim file along with its Motion to Compel Appraisal,"[16] which GeoVera filed on May 5, 2010 (Docket Entry No. 7).  The parties do not dispute that Wilson is a Texas resident and domiciliary[17] and that, if added, the case would be remanded.

In their proposed amended complaint, the Wards allege that Wilson is liable for common law fraud, conspiracy to commit fraud,

---

[12]Defendant's Notice of Removal, Docket Entry No. 1.

[13]Plaintiffs' Motion, Docket Entry No. 11, ¶ 2.

[14]Plaintiffs' Motion, Docket Entry No. 11, ¶¶ 2, 9.

[15]Plaintiffs' Reply to Defendant's Response to Plaintiffs' Motion for Leave to File First Amended Complaint ("Plaintiffs' Reply"), Docket Entry No. 17, ¶ 2.

[16]Id. ¶ 3.

[17]Plaintiffs' First Amended Complaint, Exhibit A to Plaintiffs' Motion, Docket Entry No. 11, ¶ 4.

and violations of the Texas Insurance Code.  The Wards support

these claims by alleging the following facts:

> 20.  Defendants GeoVera and Wilson misrepresented to
>      Plaintiffs that the damage to the Property was not
>      covered under the Policy, even though the damage was
>      caused by a covered occurrence. . . .
>
> 21.  Defendants GeoVera and Wilson failed to make an
>      attempt to settle Plaintiffs' claim in a fair
>      manner, although they were aware of their liability
>      to Plaintiffs under the Policy. . . .
>
> 22.  Defendants GeoVera and Wilson failed to explain to
>      Plaintiffs the reasons for their offer of an
>      inadequate settlement. . . .
>
> 23.  Defendants GeoVera and Wilson failed to affirm or
>      deny coverage of Plaintiffs' claim within a
>      reasonable time. . . .
>
> 24.  Defendants GeoVera & Wilson refused to fully
>      compensate Plaintiffs[] under the terms of the
>      Policy, even though Defendants GeoVera and Wilson
>      failed to conduct a reasonable investigation. . . .[18]

Furthermore, the Wards allege that Wilson "knowingly or

recklessly made false representations . . . as to material facts

and/or knowingly concealed all or part of material information from

Plaintiffs."[19]  According to the Wards, Wilson spent almost two

hours on their property carrying out his inspection.[20]  They point

to specific instances of Wilson's conduct, claiming Wilson

(a) "refused to acknowledge all of the damage to Plaintiffs' roof

despite overwhelming evidence to the contrary"; (b) "refused to

---

[18]Id. ¶¶ 20-24.

[19]Id. ¶ 29.

[20]Id. ¶ 16.

take pictures of Plaintiffs' roof and represented to Plaintiffs that this was to their advantage because, in his opinion, the damage to the roof was a pre-existing condition"; and (c) wrote a report for GeoVera "riddled with errors" and "failed to include most of Plaintiffs' Hurricane Ike damages that had been noted upon inspection."[21] All of these alleged facts occurred before the Wards filed their original petition.

Plaintiff Daniel Ward also submitted a sworn affidavit as an attachment to an earlier pleading in this action, in which he stated that he "[did] not remember [the adjuster's] name, but an adjuster came out to inspect [the Plaintiffs'] home."[22]  Mr. Ward also averred "the adjuster was at [their] house for almost two (2) hours" and that he "told [them] that he would not take pictures of [their] roof because it would severely limit [their] claim since he believed the damages were pre-existing."[23]  These personal inter-actions also occurred before the Wards filed their original petition.

## C.   Defendant's Response

GeoVera argues in response that the plaintiffs' motion should be denied because the Wards, through the addition of a nondiverse

---

[21]Id.

[22]Affidavit of Daniel Ward, Exhibit A to Plaintiffs' Response and Supporting Memorandum to GeoVera Specialty Insurance Company's Motion to Compel Appraisal Subject to Plaintiffs' Motion to Remand ("Plaintiffs' Response"), Docket Entry No. 10, p. 2.

[23]Id.

party, are merely attempting to defeat federal diversity jurisdiction.[24] According to GeoVera, denial of the Wards' motion is proper because the Wards knew about Mr. Wilson's activities and knew or should have known Mr. Wilson's identity before they originally filed suit.[25]

In support of these contentions, GeoVera refers to the Wards' statements in their motion before the court acknowledging that Wilson "personally communicated with Plaintiffs throughout the claim handling process" and played a "major role" in the investigation of their claim.[26] GeoVera also cites a letter out-lining the adjustment and settlement of the Wards' claim, as well as a supporting affidavit stating that the letter was sent to the Wards on October 20, 2008.[27] The letter to the Wards was not written by Joel Wilson, but the name "Joel" appears in several of the pages comprising the Loss Report and the Estimate, which are attached to the letter.[28] Additionally, Joel's business telephone

---

[24]Defendants' Response to Plaintiffs' Motion for Leave to File First Amended Complaint ("Defendants' Response"), Docket Entry No. 16, ¶ 5.1.

[25]Id. ¶¶ 4.3-4.6.

[26]Id. ¶ 4.5 (quoting Plaintiffs' Motion, Docket Entry No. 11, ¶¶ 18, 21.

[27]Adjustment and Settlement Letter, Exhibit 2 to Defendants' Response, Docket Entry No. 16; Affidavit of Jim Bledsoe, Exhibit 1 to Defendants' Response, Docket Entry. No. 16.

[28]Adjustment and Settlement Letter, Estimate, and Statement of Loss, Exhibit 2 and attachments to Exhibit 2 to Defendants' Response, Docket Entry No. 16.

number and business address are both listed on the Estimate GeoVera sent to the Wards in October of 2008.[29]

## II.  **Applicable Law**

### A.   **Rule 15 Standard**

If a party's motion for leave to amend a pleading is filed before the deadline set out by the court's scheduling order, Federal Rule of Civil Procedure 15 ordinarily governs whether the amendment will be allowed.  The Wards filed their motion for leave to amend on May 20, 2010 (Docket Entry No. 11), well before the August 6, 2010, deadline set out in the scheduling order (Docket Entry No. 14).

Under 15(a), a "party may amend its pleading once as a matter of course within (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1).  "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  The rule provides that "[t]he court should freely give leave when justice so requires." Id.

---

[29]Estimate and Statement of Loss, attachments to Exhibit 2 to Defendants' Response, Docket Entry No. 16.

-8-

**B.    Amendments Invoking a _Hensgens_ Analysis**

The Wards' proposed amendment, however, faces a different standard.  An amendment that would add a "new nondiverse defendant in a removed case" should be scrutinized "more closely than an ordinary amendment."  _Hensgens v. Deere & Co._, 833 F.2d 1179, 1182 (5th Cir. 1987).   28 U.S.C. § 1447(e) provides that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."   Increased scrutiny is appropriate because "the court's decision will determine the continuance of its jurisdiction."  _See Hensgens_, 833 F.2d at 1182.[30]

The court is confronted with competing interests.  On one hand is the possibility of parallel proceedings at the state and federal levels, which could lead to inconsistent results and the waste of judicial resources.   _Id._   On the other hand is the diverse defendant's interest in retaining the federal forum.  _Id._   When confronted with these competing interests, the court "should use its discretion in deciding whether to allow that party to be added."  _Id._

---

[30]Although _Hensgens_ was decided prior to the enactment of § 1447(e), the Fifth Circuit has suggested the _Hensgens_ analysis still applies.  _See Templeton v. Nedlloyd Lines_, 901 F.2d 1273, 1275-76 (5th Cir. 1990) (per curiam) (discussing the legislative history behind § 1447(e)).

The Fifth Circuit in Hensgens set out a nonexhaustive list of factors the court should consider to balance the defendant's interests in maintaining the federal forum with the competing interests of not having parallel lawsuits. Id. The list includes: (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction, (2) whether plaintiff has been dilatory in asking for amendment, (3) whether plaintiff will be significantly injured if amendment is not allowed, and (4) any other factors bearing on the equities. Id. If the court permits the amendment of the nondiverse defendant, it then must remand to the state court; if the amendment is not allowed, the court maintains jurisdiction. Id.

### III.  Analysis

The Wards argue that they were unaware of Wilson's identity and specific actions at the time they filed their original petition.[31] GeoVera argues that all four of the Hensgens factors weigh in favor of denying the Wards' motion for leave to amend, and that the Wards' primary purpose in bringing this motion is to defeat diversity jurisdiction.[32] Each of the four factors will be considered in turn.

---

[31]Plaintiffs' Motion, Docket Entry No. 11, ¶ 4.

[32]Defendant's Sur-Reply to Plaintiffs' Reply to Defendant's Response to Plaintiffs' Motion for Leave to File First Amended Complaint ("Defendant's Sur-Reply"), Docket Entry No. 21, ¶ 5.1.

**A.   Determining the Purpose of the Wards' Motion**

When district courts in the Fifth Circuit analyze the first Hensgens factor, "they consider 'whether the plaintiffs knew or should have known the identity of the nondiverse defendant when the state court complaint was filed.'" Gallegos v. Safeco Ins. Co. of Ind., No. H-09-2777, 2009 WL 4730570, at *3 (S.D. Tex. Dec. 7, 2009) (quoting Tomlinson v. Allstate Indem. Co., No. Civ. A. 06-0617, 2006 WL 1331541, at *3 (E.D. La. May 12, 2006)). "[A] plaintiff's failure to join a non-diverse defendant to an action prior to removal when such plaintiff knew of a non-diverse defendant's identity and activities suggests that the purpose of the amendment is to destroy diversity jurisdiction." Lowe v. Singh, No. H-10-1811, 2010 WL 3359525 (S.D. Tex. Aug. 23, 2010) (citing, among others, In re Norplant Contraceptive Prods. Liab. Litig., 898 F. Supp. 429, 432 (E.D. Tex. 1995)).

In Gallegos a court in this district considered facts similar to those present in this action.  There, the plaintiff sued his insurance company for allegedly mishandling his insurance claim for damages his house sustained during Hurricane Ike. Gallegos, 2009 WL 4730570, at *1.  The court found the first Hensgens factor weighed in favor of denying the motion, in part because the plaintiff knew the existence and identity of the claim adjuster before filing the original state-court petition.  Id. at *3. Although the plaintiff claimed that he had "recently learned" who

the adjuster was, the record showed to the contrary:   The
adjuster's name and contact information was on three separate
letters the plaintiff had received before he filed suit.   Id.

Similarly, the court in Irigoyen v. State Farm Lloyds, No. CA-
C-03-324-H, 2004 WL 398553, at *3 (S.D. Tex. Jan. 5, 2004), found
the first Hensgens factor weighed in favor of denial.   The
plaintiffs in that case brought suit against their insurance
company for allegedly mishandling their insurance claim.   Id. at
*1.   The court found the plaintiffs "admittedly knew," at the time
of their original petition, that the two proposed defendants had
worked on their claim as adjusters for their insurance company.
Id. at *3-4; see also O'Connor v. Auto Ins. Co. of Hartford Conn.,
846 F. Supp. 39, 40-41 (E.D. Tex. 1994) (denying plaintiff's post-
removal motion to join an insurance agent as a defendant because
the petition showed the plaintiff knew about the agent's role at
the time the petition was filed).

The facts in this action demonstrate that the Wards knew or
should have known of Wilson's identity and involvement when they
filed their original petition in state court.   In Daniel Ward's
affidavit he stated that the claims adjuster was at his home for
two hours to conduct an inspection.[33]   The Wards also state in their
motion for leave to amend that "Wilson has firsthand knowledge

_____

[33]Affidavit of Daniel Ward, Exhibit A to Plaintiffs' Response,
Docket Entry No. 10, p. 2.

-12-

regarding the claim, and personally communicated with Plaintiffs throughout the claim handling process."[34]  Although Mr. Ward stated he did not remember the adjuster's name, the Wards had more than a year between the inspection and their original petition to acquire enough information to include Wilson as a defendant.

The Wards do not dispute that on October 20, 2008, over a year before they filed their petition, GeoVera sent them a letter with an enclosed Estimate and Statement of Loss.  These documents are important to the pending motions because they contain information that would be instrumental in identifying the Wards' adjuster, including Wilson's first name ("Joel"), a designation that Joel was their claim representative and estimator, Joel's business address, and Joel's business telephone number.[35]

The Wards attempt to strengthen their argument by distinguishing their facts from those in Bramlett v. Med. Protective Co., No. 3:09-CV-1596-D, 2010 WL 1491422 (N.D. Tex. Apr. 13, 2010), where the court vacated a post-removal joinder of a nondiverse defendant.  Id. at *1.  The court's reasoning in Bramlett with regard to the first Hensgens factor hurts, not helps, the Wards' situation.  In essence, the court was not persuaded by the plaintiffs' explanation for delaying joinder because the facts

---

[34]Plaintiffs' Motion, Docket Entry No. 11, ¶ 18.

[35]Statement of Loss and Estimate, attachments to Exhibit 2 to Defendants' Response, Docket Entry No. 16.

underlying the claim against the proposed defendant were known --
or should have been known -- to the plaintiffs before they filed
their original petition.  Id. at *5.  Here, the Wards' interaction
with the proposed defendant and receipt of documents containing the
proposed defendant's contact information, both of which occurred
prior to the original lawsuit, show that the Wards knew or should
have known the identity and actions of Wilson before they filed
their state-court petition.  The court therefore concludes that the
purpose of adding Wilson as a defendant is to defeat diversity
jurisdiction.

**B.   The Wards' Diligence in Filing Leave to Amend**

When plaintiffs propose an amendment to add nondiverse
defendants after removal based on diversity jurisdiction, courts
generally scrutinize the amount of time that passed between the
filing of the original petition and the motion for leave to amend
and between the notice of removal and the motion for leave to
amend.  See Gallegos, 2009 WL 4730570, at *4 (finding the plaintiff
was dilatory after examining the delay since the filing of the
state-court action and the notice of removal); Irigoyen, 2004
WL 398553, at *4 (same).  When considering the second Hensgens
factor, other courts in this district have found the plaintiff was
dilatory under the following facts:  when the motion to amend was
filed approximately two months after the original petition and
almost thirty days after notice of removal, Gallegos, 2009

-14-

WL 4730570, at *4; when the motion to amend was filed four months after the original petition and nearly two months after notice of removal, <u>Multi-Shot, LLC v. B&T Rentals, Inc.</u>, No. H-09-3283, 2010 WL 376373, at *9 (S.D. Tex. Jan. 26, 2010); and when the motion to amend was filed four and a half months after the original petition and two and a half months after notice of removal, <u>Irigoyen</u>, 2004 WL 398553, at *4 (S.D. Tex. Jan. 5, 2004).

Here, the Wards argue they sought leave to amend "immediately following the discovery of the specific adjuster associated with Plaintiffs' case."[36]   The record demonstrates, however, that the plaintiffs moved for leave to amend on May 20, 2010, which is over four months after the filing of the original petition[37] and over two months after the notice of removal.[38]  Moreover, the actions giving rise to the Wards' claims against Wilson occurred approximately fifteen months before they filed suit, and the Wards had access to the information they needed to include Wilson in the petition. Thus, the court concludes the Wards were dilatory in seeking leave to amend.

## C.   **The Wards' Injury If the Amendment is Not Allowed**

In considering the third factor, "courts consider whether the already named diverse defendant would be unable to satisfy a future

_____

[36]Plaintiffs' Reply, Docket Entry No. 17, ¶ 5.

[37]Plaintiffs' Original Petition, attachment to Defendant's Notice of Removal, Docket Entry No. 1.

[38]Defendant's Notice of Removal, Docket Entry No. 1.

judgment." <u>Gallegos</u>, 2009 WL 4730570, at *5; <u>see</u> <u>Irigoyen</u>, 2004 WL 398553, at *5. Courts also analyze "whether the plaintiff could recover against the proposed nondiverse defendant." <u>Gallegos</u>, 2009 WL 4730570, at *5.

Here, there is no indication GeoVera would be unable to satisfy a judgment. In addition, although some of the Wards' claims against Wilson may have merit, they are almost identical to their claims against GeoVera. There is no individual claim against Wilson the Wards would be unable to redress in their claims against GeoVera. Although, as directed by <u>Hensgens</u>, the court takes into account the potential inefficiency of parallel state and federal proceedings if the Wards choose to sue Wilson in state court, that interest is outweighed by GeoVera's interest in maintaining a federal forum, the timing of the Wards' motion, and the Wards' intent in adding Wilson as a defendant post-removal.

**D.   Other Equitable Factors**

The court does not find any additional factors that significantly impact its ruling on the Wards' motion.

**E.   Conclusion**

The court will deny the Wards' motion for leave to amend under § 1447(e) because under the factors set out by <u>Hensgens</u>, the Wards' purpose in proposing a new defendant is to defeat diversity jurisdiction, the Wards were dilatory in seeking amendment, and the

-16-

Wards will not be significantly injured if Wilson is not joined as a defendant.

### IV.  Conclusion and Order

For the reasons explained above, the court concludes that the Wards have failed to establish they are entitled to join a new, nondiverse defendant to this action.  Accordingly, Plaintiffs' Motion for Leave to File First Amended Complaint (Docket Entry No. 11) is **DENIED**.

**SIGNED** at Houston, Texas, on this 10th day of September, 2010.

SIM LAKE
UNITED STATES DISTRICT JUDGE